[Cite as *Deem v. Fairview Park*, 2011-Ohio-5836.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96843**

## RICHARD M. DEEM

PLAINTIFF-APPELLANT

vs.

## CITY OF FAIRVIEW PARK, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-735823

**BEFORE:** Cooney, J., Blackmon, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** November 10, 2011

**ATTORNEY FOR APPELLANT**

Daniel J. Ryan
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEES**

Sara J. Fagnilli
Director of Law
City of Fairview Park
20777 Lorain Road
Fairview Park, Ohio 44126

COLLEEN CONWAY COONEY, J.:

{¶ 1} Plaintiff-appellant, Richard Deem ("Deem"), appeals the trial court's judgment affirming the Fairview Park Civil Service Commission's decision finding that defendant-appellee, city of Fairview Park ("Fairview" or "the City"), could legally reduce his pay rate pursuant to R.C. 124.37. We find no merit to the appeal and affirm.

{¶ 2} Deem held the position of police captain in the classified service of the City from 1997 until the City abolished the position on April 17, 2006, as a cost-cutting measure. At the time, the City's projected revenues were approximately $1.2 million below its projected expenses. In an effort to balance the City's budget, Mayor Eileen Patton ("Patton") asked each department to cut its budget by 11% through non-personnel related cuts. Mayor Patton testified that she did not want any employees to lose their jobs because layoffs not only affect personnel, but they affect the quality of the

City's services. She was particularly concerned with maintaining adequately staffed police and fire departments to ensure the City's safety.

{¶ 3} At a hearing before the civil service commission, Mayor Patton testified that she met with the three unions representing the police, fire, and service departments, and asked for concessions. She asked the unions to eliminate longevity and the uniform allowance, and to move to a less expensive health care plan. Believing that Mayor Patton was blaming them for the shortfall, the unions rejected these proposals and asked the Mayor to present another plan that would apply equally to both union and non-union employees. Accordingly, Patton proposed an across-the-board 5% pay cut, including her own salary, and a less expensive health care plan. This proposal along with the line item cuts by the department heads would have achieved the goal of a balanced budget without reducing the police force. However, the unions also rejected the 5% across-the-board pay cut.

{¶ 4} Mayor Patton researched how other cities coped with budget problems and learned that none of the surrounding cities of similar size have a captain position in their police departments or an assistant fire chief in their fire departments.[1] Patton proposed the idea of eliminating the captain

---

[1] The City ultimately eliminated the assistant fire chief position along with the captain position in the police department. Some employees in the service department were laid off and several hourly employees had their hours reduced. The City's restructuring affected 28 City

position to the Police Negotiating Team, as well as to Randy Weltman, the union representative, before introducing it as an ordinance to the city council.

She testified that she did not receive any written objection letters from anyone in the police department even though she communicated the proposal to the police chief through memoranda.

{¶ 5} Shortly thereafter, Patton addressed a letter to then-Captain Deem advising him that because of decreases in revenues and increases in expenditures, the police department was being restructured by eliminating the captain position. The captain position was abolished, and Deem was demoted to the position of lieutenant and paid the lieutenant rate set forth in the collective bargaining agreement between the City and the Union.

{¶ 6} The Fairview City Council enacted the ordinance eliminating the captain position on April 17, 2006. Deem alleged that he never received notice of his demotion and pay reduction. Yet he continued to perform the same duties as well as the additional duties as lieutenant and received reduced compensation.

{¶ 7} On December 7, 2007, Deem requested a hearing before the Fairview Park Civil Service Commission, appealing the abolishment of the captain position. The Commission denied the request as untimely, and

employees.

Deem appealed. On appeal, this court reversed the trial court's judgment affirming the denial and found that because there was no evidence that Deem received notice of the demotion and attendant pay reduction, the City violated his right to due process. *Deem v. Fairview Park*, Cuyahoga App. No. 93135, 2009-Ohio-6314.

{¶ 8} On remand, the civil service commission held a hearing and concluded that the City was permitted to reduce his pay rate pursuant to R.C. 124.37. Deem appealed to the common pleas court pursuant to R.C. Chapter 2506, which governs administrative appeals. The trial court upheld the commission's ruling. Deem now appeals to this court, raising two assignments of error.

{¶ 9} In *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147-148, 2000-Ohio-493, 735 N.E.2d 433, the Ohio Supreme Court explained the standard of review appellate courts should apply when reviewing R.C. Chapter 2506 administrative appeals:

> "Construing the language of R.C. 2506.04, we have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. (Citations omitted.)

"The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is 'more limited in scope.' (Emphasis added.) *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 30, 465 N.E.2d 848, 852. 'This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence,"as is granted to the common pleas court.'" (Citation omitted.)

{¶ 10} Thus, we review the trial court's judgment to determine if the lower court abused its discretion in deciding that a preponderance of reliable, probative, and substantial evidence supported the administrative decision.

Reduction in Pay

{¶ 11} In his first assignment of error, Deem argues the Fairview Park Civil Service Commission erroneously failed to apply R.C. 124.34(A) and find that the City demoted him without justification. He contends the commission should have applied R.C. 124.34 because it governs the reduction of pay for classified civil servants and no other statutes permit involuntary reductions in pay rate. We disagree.

{¶ 12} R.C. 124.34 governs the reduction, suspension, removal, or demotion of a civil service employee for disciplinary reasons. *Smith v. Cincinnati* (1993), 85 Ohio App.3d 13, 20, 619 N.E.2d 46, fn.2. R.C. 124.37, however, permits such reductions by demotion when "it becomes necessary * * * through lack of work or funds * * * to reduce the force." *McAlpin v. Shirey*

(1997), 121 Ohio App.3d 68, 75, 698 N.E.2d 1051. R.C. 124.37(A) provides, in pertinent part:

> "When it becomes necessary in a police or fire department, through a lack of work or funds, or for causes other than those outlined in Section 124.34 of the Revised Code, to reduce the force in such department, the youngest employee in point of service shall be laid off first. * * * When a position above the rank of patrolman in the police department and above the rank of regular fireman in the fire department is abolished, and the incumbent has been permanently appointed, he shall be demoted to the next lower rank and the youngest officer in point of service in the next lower rank shall be demoted, and so on down until the youngest person in point of service has been reached, who shall be laid off."

{¶ 13} R.C. 124.321 also allows municipalities to lay off employees or abolish positions for a variety of reasons including a "lack of funds." R.C. 124.321(B); *Penrod v. Ohio Dept. of Adm. Servs.*, 113 Ohio St.3d 239, 2007-Ohio-1688, 864 N.E.2d 79, ¶15-16. R.C. 124.321(B)(2) provides that "a 'lack of funds' means an appointing authority has a current or projected deficiency of funding to maintain current, or to sustain projected, levels of staffing and operations." Further, R.C. 124.321(D) provides:

> "(D)(1) Employees may be laid off as a result of abolishment of positions. As used in this division, 'abolishment' means the deletion of a position or positions from the organization or structure of an appointing authority.

> "For purposes of this division, an appointing authority may abolish positions for any one or any combination of the following reasons: as a result of a reorganization for the efficient operation of the appointing authority, for reasons of economy, or for lack of work.

"(2)(a) Reasons of economy permitting an appointing authority to abolish a position and to lay off the holder of that position under this division shall be determined at the time the appointing authority proposes to abolish the position. The reasons of economy shall be based on the appointing authority's estimated amount of savings with respect to salary, benefits, and other matters associated with the abolishment of the position, except that the reasons of economy associated with the position's abolishment instead may be based on the appointing authority's estimated amount of savings with respect to salary and benefits only, if:

"(i) Either the appointing authority's operating appropriation has been reduced by an executive or legislative action, or the appointing authority has a current or projected deficiency in funding to maintain current or projected levels of staffing and operations[.]"

{¶ 14} Evidence introduced at the hearing, through both testimony and exhibits, established that when the City eliminated the captain position, it was confronting a substantial decrease in revenues as a result of the demolition of a shopping mall, layoffs at the NASA Glenn facility, and layoffs of employees of the Fairview Park Board of Education, the three largest employers in the City. The Mayor explained that State taxes and personal property taxes were also diminished, and interest income the City was receiving from banks had decreased. As a result, the City had projected a $1.2 million shortfall in revenue.

{¶ 15} Furthermore, concurrent with Deem's demotion, the least senior lieutenant was demoted to the position of sergeant, and the least senior sergeant was demoted to patrolman pursuant to R.C. 124.37(A). Although

no member of the police department was laid off, one patrolman was cut from the payroll when he was called to active duty in the Army Reserves in September 2006, and one lieutenant retired in August 2006. The fact that no patrolman was laid off, does not invalidate the City's actions with regard to Deem. The City also abolished the assistant chief position in the fire department, laid off two employees in the service department, laid off part-time employees, and reduced other employees' hours as part of the overall restructuring of all City departments.

{¶ 16} Deem argues that R.C. 124.34 should control the commission's decision and that, because none of the reasons enumerated in that statute justify his demotion and reduction in pay, his demotion was illegal. However, to accept this argument would render R.C. 124.37 meaningless. If a municipality could not legally demote a police officer without disciplinary action of the type contemplated in R.C. 124.34, the City would be powerless to cope with problems posed by insufficient funds or lack of work that warrant a reduction in force in its police and fire departments.

{¶ 17} There is no dispute that the City followed the proper demotion and layoff procedures set forth in R.C. 124.37 and 124.321. The evidence in the record establishes not only that the City followed the applicable law to abolish the captain position, but the evidence also demonstrates that it did so

in good faith. Accordingly, we find no abuse of discretion in the trial court's judgment affirming the Fairview Park Civil Service Commission's decision.

{¶ 18} The first assignment of error is overruled.

Back Pay

{¶ 19} In his second assignment of error, Deem contends the civil service commission erred when it denied him back pay. He claims he is entitled to compensation for the difference in salary from the captain's pay rate to the lieutenant's pay rate. Deem argues that the removal of a position in the police force "in no way changes [his] rank and compensation."

{¶ 20} However, R.C. 124.37 and 124.321 authorize the layoffs and demotions of civil servants when there is a "lack of funds." Obviously, the layoffs and demotions are intended to reflect a corresponding reduction in pay as a money saving measure. Once again, to accept Deem's argument, would render these statutes meaningless. The City must have some way to reduce its expenditures in the face of a financial shortfall.

{¶ 21} Deem suggests that involuntary demotions and pay reductions in the absence of an offense on the employee's part renders the civil service system meaningless. We agree that the civil service system is intended to protect public employees from unfair employment practices. The Ohio Supreme Court has said that: "[t]he purpose of the civil service system is to

provide a 'stable framework of public offices upon which a workable civil service system may be constructed' while 'avoiding the traditional spoils system * * * and * * * providing a method of fair employee selection and promotion based upon merit and fitness.'" *Hungler v. Cincinnati* (1986), 25 Ohio St.3d 338, 344, 496 N.E.2d 912, quoting *McCarter v. Cincinnati* (1981), 3 Ohio App.3d 244, 248, 444 N.E.2d 1053.

{¶ 22} However, R.C. 124.37 and 124.321 are part of the civil service framework and protect civil servants from arbitrary demotions, layoffs, and pay cuts. The City could not demote Deem, abolish the captain position, and reduce his pay except for either one of the disciplinary reasons set forth in R.C. 124.34, or one of the economic reasons set forth in R.C. 124.321 and 124.37. Moreover, the City must provide competent, credible evidence to support its action, and Deem has the right to a review of the City's actions through the civil service commission, the common pleas court, and this court. Having reviewed the record, we find Deem's demotion and corresponding reduction in pay to be justified and supported by a preponderance of competent, credible evidence. Therefore, he is not entitled to back pay.

{¶ 23} The second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
COLLEEN CONWAY COONEY, JUDGE

PATRICIA ANN BLACKMON, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR